## Poterie Gas Company *v.* George Poterie, Appellant.

*Oil lease—Forfeiture—Equity.*

On a bill in equity by a lessee under an oil and gas lease to restrain the lessor from interfering with the leasehold premises, it appeared that the lessor had forcibly taken possession of the premises, severed the pipes, and diverted the gas, alleging as a ground therefor that the lease was forfeited. By injunction the lessee was reinstated. A master was appointed who found that there had been no default by the lessee, and recommended that the injunction should be made perpetual. The master also recommended that the lessor should be ordered to pay to the lessee a specified sum, as compensation for the gas diverted during the time the lessor was in possession. The decree thus recommended was entered by the court " without prejudice to the rights of the lessor to compel the lessee to account to him for his share of the earnings of the gas well." *Held,* that the decree was without error.

Argued Oct. 12, 1896. Appeal, No. 88, Oct. T., 1896, by defendant, from decree of C. P. Armstrong Co., March T., 1892, No. 290, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

The master, Ross Reynolds, Esq., found the facts to be as follows:

1. The Poterie Gas Company is a corporation formed under the provisions of the act of May 29, 1885, and was duly chartered on December 5, 1890. By its charter the said company is empowered to mine for natural gas in Gilpin township, Armstrong county, to supply gas to consumers in the borough of Leechburg, in Armstrong county, and to lay its lines from Gil pin township to the said borough of Leechburg.

2. George Poterie owned a tract of land in Gilpin township, Armstrong county, Pa., and, in order to develop the same for gas and to furnish gas for his tar works in said township he was instrumental in forming a company by the subscription of himself and some forty-two others to an agreement dated January 13, 1890, the company being entitled the Allegheny Valley Oil and Gas Company, the said agreement containing the following provisions: Said contemplated corporation to have a capital stock of $3,000, divided into sixty (60) shares of the par value of $50.

Our subscriptions are made on the following conditions: That said George Poterie will lease to said company for a period of five years said five acres of land for the purpose of drilling for oil or gas or both, and furnish boiler, engine, fuel, and give his personal attention to the drilling of the first well, in consideration whereof said company will pay to him one third of all the profits realized from oil or gas found on said five acres of ground, and furnish him from its well as much gas as he may need in the manufacturing of coal tar at his works on said premises, at the rate of ten cents per barrel for each and every barrel of coal tar manufactured.

3. Subsequently, on December 5, 1890, in pursuance of said subscription paper, a charter was granted in name of the Poterie Gas Company, instead of the Allegheny Valley Oil and Gas Company, with a capital stock of $5,000, divided into 100 shares of $50.00. This increase from original capital being determined at a meeting of the company held November 6, 1890, and for the reason that in the judgment of expert drillers the sum of $3,000 would not likely be sufficient to thoroughly test the proposed well to be drilled on lease.

4. On the first day of November, 1890, George Poterie did lease to the Poterie Gas Company, five acres of ground in Gilpin township, Armstrong county, for five years from the first of January, 1890, for the purpose of drilling and operating for gas and oil and other products, using a printed form of a house lease peculiar to the Denny estate, said lease reciting that the term was from the first day of January, 1890, for and during the term of five years for the annual rent of $1.00 and other considerations, the phrase " one dollar and other considerations " being in the written portions of the lease, and said other consideration referring to subscription paper of October 13, 1890, wherein George Poterie was to receive one third of the profits realized from oil or gas found on the five acres of ground de scribed in the lease, and as much gas as he might need for his tar works at ten cents per barrel.

The lease contained also a printed clause of forfeiture as follows : " That for a breach of the foregoing covenants, or any of them, the lessor shall be entitled ———— to re-enter and re-possess ———— said premises as of ———— original estate therein . . . ."

5. In pursuance of said lease the Poterie Gas Company entered into possession of the leased premises, drilled a well thereon, and about January 25, 1891, struck a good supply of gas.

6. After striking the well it was discovered that with but one well, and so small a tract of land in the control of the company, it would be difficult to find a suitable market for the gas ; and with the view of securing more territory and increasing the capital stock of the company, a meeting of the stockholders was called for February 24, 1891. At this meeting a number of the stockholders expressed their dissent in strong terms that the capital stock of the company had been made $5,000, instead of $3,000 as provided in the subscription paper, without notice to them. A number of the stockholders also opposed the scheme of increasing the capital stock to $50,000 and securing more territory, asserting that the Denny estate people were instrumental in increasing the stock from $3,000 to $5,000 to secure a controlling interest in the company. This meeting was adjourned to Thursday, February 26, 1891. At this adjourned meeting it was suggested that those interested in property sur-

rounding the Poterie well, including George Poterie, should retire, and that they, the smaller subscribers who owned no property, should take their own action. This was accordingly done, and the property-holding members were in a short time called back and informed that a committee of four had been appointed, and the meeting again adjourned to March 2, 1891.

7. At the meeting of March 2, 1891, the committee appointed at the prior meeting reported "that they had decided to recommend the sale of all their stock to the holders of the surrounding property at $75.00 per share, provided they would pay to George Poterie $2,500 for his one third interest in the well; that the property holders accepted the proposition, agreeing to pay Poterie $2,500, either all cash or part cash and part stock," and this report of the committee was ratified by a vote of the stock, forty-three ayes, including Poterie, and only two nays, viz. Vete and McDonald.

8. The minutes of the meetings of February 29, 1891, and March 2, 1891, disclose a basis for settlement between the stockholders who owned real estate and the stockholders who did not own real estate in the vicinity of the well, reported by a committee of the latter, binding no one person.

9. The Poterie Gas Company was not a party to the transaction which occurred at the meeting of February 26, 1891 and March 2, 1891, they being between the stockholders alone, and not the business of the company.

10. There is not sufficient evidence from which to find that the lease of November 1, 1890, has been altered or modified as alleged in second paragraph of plaintiff's bill filed at No. 290, March term, 1892.

11. In the month of April following the meeting of March 2, 1891, H. D. Denny tendered to George Poterie $2,500 for his interest in the one third profits of the well, which tender George Poterie refused.

12. After the drilling of the well on the five acre lease of George Poterie, the Poterie Gas Company entered into an agreement on March 5, 1891, with Kirkpatrick & Company, Limited, of Leechburg, Pa., to supply their mills with gas; at once constructed a line from their land in Gilpin township to Leechburg, at an expense of $32,000, and since that time, viz, the middle of April, 1891, have been supplying said Kirkpatrick & Com-

pany, Limited, with gas from said lease and their wells in the neighborhood belonging to the Poterie Gas Company. The well on the five acre lease however being out of their possession about one year as hereafter shown. In negotiating with Kirkpatrick & Company, Limited, for gas, George Poterie took part, and was at that time a director of the said Poterie Gas Company.

13. During the summer and fall of 1891, George Poterie, by his attorney, A. L. Large, Esq., a number of times demanded from the Poterie Gas Company that it pay to George Poterie more money than $2,500 for his, Poterie's, interests in the one-third of the profits, or settle under the terms of the lease and original contract. This demand was disregarded, and no statement was furnished him, and no settlement made with him, or rent paid to him on the first day of January, 1892.

14. On the second day of January, 1892, George Poterie entered upon said lease, cut and disconnected the lines of the Poterie Gas Company from the well, re-entered and took possession of said lease of November 1, 1890, and continued in the possession thereof until February 2, 1892, when the Poterie Gas Company, by its officers and agents, entered upon said premises, and against the protest of the said George Poterie forcibly took possession of said property.

15. The said George Poterie again obtained possession of said well and premises, and had possession when the bills in these cases were presented on February 6, 1892, and that he has continued to hold the possession of said well and property from that time until the order enjoining him by the Supreme Court, when he was compelled to surrender possession of the well to the Poterie Gas Company, on January 20, 1893.

16. Well No. 1 (the Poterie well), the one in suit, and the only one on the five acre lease, was turned into the line leading to Leechburg to supply Kirkpatrick & Company, Limited, on April 16, 1891; well No. 2, in July, 1891; well No. 3, September, 1891; well No. 4, January 1, 1892; well No. 5, in April, 1892; well No. 6, in April, 1892; well No. 7, October, 1892; well No. 8, November, 1892; well No. 9, in May, 1893. . . . . .

18. The amounts realized from the sale of gas to Kirkpatrick & Company were as follows; from well No. 1, April, 1891, $370; May, $650, June, $626, from wells Nos. 1 and 2, for July, $400; August, $755.00. The receipts from wells Nos. 1, 2 and

3, for September, $770; for October, $853.33; for November, $728, and for December, $620, and from all the wells connected with the line to Leechburg including well No. 1, from January 20, 1893, to August 1, 1893, $5,633.66.

19. The expense of well No. 1, including costs of drilling, up to time it was disconnected on January 2, 1892, was $5,149.60, and from January 20, 1893, to August 1, 1893, was $328.15.

20. The expense of main line to Leechburg was about $33,000.

21. The breaking or cracking of the retorts of George Poterie at his tar works cannot be attributed to the negligence of the Poterie Gas Company.

### FINDINGS OF LAW.

1. There was no such demand by George Poterie from the Poterie Gas Company for settlement, or denial by the latter company of their lessor's title to the five acre lease, as would justify said Poterie in asserting a forfeiture of the lease.

2. There were no profits under the subscription paper and lease in suit on January 2, 1892, and consequently no right or power in said George Poterie to forfeit the lease for non-payment of rent, and to resume possession thereof.

The master recommended the following decree, which was entered by the court:

And now, March 9, 1896, the exceptions to the master's report having been dismissed by the court, it is ordered, adjudged and decreed: First, That the defendant, George Poterie, his agents and employees, are hereby enjoined and restrained from interfering with the pipes, lines and connections between the well on the George Poterie lease and the main line of the plaintiff company leading to Leechburg, and from diverting the gas therefrom, or from said well, so long as the lease in controversy remains in force and effect.

Second, That George Poterie, the defendant, is hereby ordered and adjudged to pay to the plaintiff company or its attorneys of record, the sum of two thousand two hundred and one and $\frac{62}{100}$ ($2,201.62), with interest thereon from August 1, 1893.

Third, That the said George Poterie, the defendant, is hereby ordered adjudged and decreed to pay all the costs in this case, including a master's fee of five hundred dollars ($500), and master's expenses $15.40, and Miss Emma Burge, stenographer, $8.75.

And further, That the entry of this decree is made without prejudice to the rights of the defendant, George Poterie, to compel plaintiff company to account to him for his share of the earnings of the gas well from February 25, 1892, to January 1, 1895, as claimed in his petition and affidavit this day filed.

*Error assigned* was above decree, quoting it.

*M. F. Leason*, with him *A. L. Large*, for appellant, cited, 3 Am. & Eng. Ency. of Law, 904; Zuck v. McClure & Co., 98 Pa. 545; American Life Ins. Co. v. McAden, 109 Pa. 399; Vanuxem v. Bostwick, 19 W. N. C. 74; Adams v. Williams, 2 W. & S. 227.

*W. D. Patton*, with him *Orr Buffington*, for appellee.

PER CURIAM, January 4, 1897:

As shown by the bill and answer, plaintiff company leased a tract of land for the term of five years from January 1, 1890, for the purpose of drilling and operating gas and oil wells.    The consideration for the lease, among other things, was one third of all profits realized from the gas and oil found on the premises. In pursuance of the lease plaintiff company took possession of the demised premises, drilled a gas well, and finding a good supply of gas in January, 1891, proceeded to market the same. Early in the following year, the defendant forcibly severed the pipes and diverted the gas from the pipe line because, as he alleged, the lease had been forfeited by reason of the lessee's failure to account for the proceeds of the well.    In 1893, the company regained possession by the action of this court in reinstating the injunction which had theretofore been granted at its instance, but had been dissolved by the court below: Poterie Gas Co. v. Poterie, 153 Pa. 10.    The case having been referred to a master was prosecuted to a hearing and final decree.    By deducting the expenses of drilling the well, laying a pipe line, etc., the master concluded, and so reported, that plaintiff company at the time it was dispossessed, did not owe defendant anything, and was therefore not in default, or subject to forfeiture; and he accordingly recommended a decree, February 17, 1894, making the injunction perpetual, and ordering the defendant to pay plaintiff company the sum of $2201.62 as compensa-

tion for the gas diverted during the time defendant was in possession and control of the well, with interest and costs. The decree thus recommended was entered by the court "without prejudice to the rights of the defendant, George Poterie, to compel plaintiff company to account to him for his share of the earnings of the gas well" to the date of the termination of the lease. The learned master's findings of fact, approved by the court, were fully warranted by the evidence, and the conclusions of law necessarily follow therefrom.

. The decree was properly entered "without prejudice" to the defendant's right to an accounting; and inasmuch as the lease has expired, he may now have his rights, in that regard, considered in due form and finally adjudicated. There appears to be nothing in the case that calls for further comment.

Decree affirmed and appeal dismissed at appellant's costs.